RENDERED: FEBRUARY 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0827-MR

JERRY THOMAS HUGHES                                             APPELLANT

APPEAL FROM JESSAMINE CIRCUIT COURT
v.        HONORABLE C. HUNTER DAUGHERTY, JUDGE
ACTION NO. 19-CI-00492

MID SOUTH CAPITAL PARTNERS,
LP; CHARLES H. RANSDELL;
COMMONWEALTH OF KENTUCKY,
JESSAMINE COUNTY; SANDRA
RANSDELL; AND UNKNOWN
SPOUSE, IF ANY, OF JERRY
HUGHES                                                         APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND TAYLOR, JUDGES.

EASTON, JUDGE:  Jerry T. Hughes (Hughes) *pro se* appeals from the Jessamine

Circuit Court's Order and Judgment of Sale to enforce a tax lien on his property

held by Appellee, Mid South Capital Partners, LP (MSCP).  There are several

procedural problems in this case apparent from a cursory review of the record. MSCP has not proceeded correctly in this case. Indeed, in part because MSCP (represented throughout by counsel) failed to file a brief, we elect to vacate the summary judgment and order of sale and remand initially for reevaluation of the prior order setting aside the dismissal of this case for failure to prosecute.

**FACTUAL AND PROCEDURAL HISTORY**

In 2013, MSCP purchased the 2012 Certificate of Delinquency for property taxes owed on Hughes' property. In 2019, MSCP filed this case to sell the encumbered property to satisfy its lien. Hughes timely filed a *pro se* Answer in which he provided his current address, which was not the address of the property subject to the lien. In his Answer, Hughes said he never received any notice of MSCP's purchase of the Certificate of Delinquency, despite having lived at the property for several years before moving to his new address. Hughes attempted on multiple occasions to contact MSCP's counsel to resolve the matter without success.

MSCP caused the expense of several warning order attorneys, including one for Hughes, even though he had filed an answer and given his correct address. No other action was taken until the circuit court issued a Notice to Dismiss for Lack of Prosecution pursuant to CR[1] 77.02 in March 2023. Because

---

[1] Kentucky Rules of Civil Procedure.

no response was filed, the circuit court dismissed the case by docket order entered in April 2023.

Despite the dismissal, MSCP filed a Motion for Summary Judgment and Order of Sale in October 2023. According to the document filed, a copy of this motion was sent to Hughes, but at the property address, not the current address he provided in his Answer. On November 8, 2023, the circuit court entered a docket order stating "Submit Judgment, per MC instructions."[2] The Master Commissioner approved the Judgment, and it was entered. No one noticed that the case had been dismissed.

Then, on January 11, 2024, the circuit court, apparently *sua sponte*, entered another docket order, which acknowledged the case had been dismissed for lack of prosecution the previous April. This order reads:

> It coming to the attention of the Court that this case was dismissed for lack of prosecution on 4-13-23, the Summary Judgment granted on 11-8-23 is hereby set aside. For good cause, Plaintiff may move under CR 60.02 to reopen, but it should note for further purposes that Jerry Hughes filed a pro se Answer entered 9-19-19 which advised all parties of his new address.[3]

---

[2] Trial Record (TR) at page 85. In some jurisdictions, the circuit court has a process for the master commissioner of the court to review tendered judgments relating to the sale of property before they are submitted to the court.

[3] TR at page 94.

MSCP filed a late Motion to Alter, Vacate or Amend on January 30, 2024. This motion stated in its entirety:

> Comes now, Plaintiff, Mid South Capital Partners, LP (hereinafter "MSCP") by and through counsel, and for this Motion to Alter, Vacate or Amend states as follows:
>
> The Plaintiff through error or oversight was not aware of the Court's Notice to Dismiss for Lack of Prosecution filed on March 15, 2023. The tax bill remains unpaid and Plaintiff will immediately pursue its action given the opportunity.
>
> WHEREFORE, Mid South Capital Partners, LP respectfully requests the Court vacate its Order of Dismissal and keep it on the docket.[4]

The circuit court signed an order granting MSCP's motion on January 30, 2024, the same day it was filed, which was prior to the noticed motion hour date on which the motion was noticed to be heard. On the motion hour date of February 8, 2024, the circuit court entered another docket order which stated "Order entered 1-30-24 in error. Set aside that order dismissing. Notice to be given to correct address on any future motion to dismiss."[5] This is confusing because the case was not being dismissed but rather reinstated. MSCP re-noticed its Motion for a hearing on April 11, 2024, and this time sent notice to the correct address for Hughes.

---

[4] TR at page 95.

[5] TR at page 99.

On April 11, 2024, Hughes was present, while MSCP's counsel was not. The circuit court indicated to Hughes that MSCP "was here today" asking for relief from the prior order, but we do not see MSCP's counsel at the bench, or acknowledged anywhere in the courtroom, or on the remote session. If counsel was there, the record does not show any comment by him much less a presentation of the noticed motion.

The circuit court asked Hughes if he would suffer any prejudice from setting aside the dismissal, as the court felt that was the only question to be answered. Hughes replied that MSCP did not follow the rules of third-party purchasers, apparently referencing the claims raised in his *pro se* Answer. The circuit court replied that he was going to set aside the dismissal, and if Hughes had any objections to MSCP's next motion, he would receive notice, and they can "get into all that" at that time. The docket order entered on April 12, 2024, stated "Granted on 1/30/24,"[6] although the order entered that date had been set aside.

Hughes then filed a motion to dismiss or set the case for trial, but the motion was apparently not properly filed with the court clerk, and a copy of the motion is not in the record. The docket sheet from May 9, 2024, reads, "No appearances. Motion denied."[7]

---

[6] TR at page 104.

[7] TR at page 105.

MSCP then filed a re-notice of its Motion for Summary Judgment and Order of Sale on May 14, 2024, to be heard on May 23, 2024. MSCP just pasted an additional certificate of service to the same motion, this time with Hughes' correct address. Also on May 14, Hughes filed a Motion for Reconsideration but again did not file it with the clerk's office. Apparently, Hughes sent his motions to the judge's office. Hughes noticed his motion to be heard on June 13, 2024.

We do not have the recording of the motion hour of May 23, 2024, but the docket sheet reads "Defendant, Jerry Hughes, has filed a Motion for Reconsideration noticed for 6-13-24, based on the statute of limitations issue. Hughes failed to appear for this motion. Motion for Default Judgment granted. Submit Judgment."[8] First, MSCP's motion was not for a *default* judgment as to Hughes. Second, there would be no reason for Hughes to appear for his own motion weeks early. And, as Hughes would try to explain, he did not know he had to appear on May 23, 2024. Hughes insisted that when he asked about the status of his case he was told by the clerk there was no need to appear for the May 23rd date.

On June 13, 2024, Hughes understandably appeared for his motion. MSCP's counsel again did not appear. The circuit court asked Hughes why it should set aside the judgment and order of sale. Hughes attempted to tell the

_____

[8] TR at page 113.

-6-

circuit court judge that he had filed his motion and had been told by a clerk that he did not have to be there for the May 23 hearing (because he had noticed his motion for the June date). In response to the mix-up with motions filed, the judge told Hughes that it was not the judge's responsibility to make sure a motion was filed with the clerk's office when the motion was sent to the judge's chambers rather than the clerk for filing. Hughes, visibly frustrated, states to the judge: "Go ahead and do whatever you want to do" and left the courtroom.

The circuit court entered the Final Judgment, In Rem Only, and Order of Sale on June 13, 2024. The docket sheet for that date reads "Mr. Hughes has failed to raise any material issue of fact. The tax bill in question is for the 2012 tax year. This action was filed in 2019, well w/in the 10 yr. statute of limitations."[9] Hughes then timely filed this appeal.

**STANDARD OF REVIEW**

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (citations

---

[9] TR at page 131.

omitted).  "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*"  *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

In this case, we are presented with a question of the circuit court's jurisdiction over this case after the dismissal.  We will look at the motion practice purportedly under CR 60.02 which should be addressed as well as the later summary judgment decision itself.  CR 60.02 motion decisions generally are reviewed under an abuse of discretion standard.  *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014).

## ANALYSIS

Hughes requests that this Court reverse the judgment and order of sale issued by the circuit court on June 13, 2024.  Before we turn to Hughes' arguments, we must address non-compliance by both sides with rules regarding briefs filed with this Court.  While this Court recognizes that Hughes is a *pro se* litigant, that does not exempt him from the requirement to follow the Kentucky Rules of Appellate Procedure (RAP).  *See Hamilton v. Milbry*, 676 S.W.3d 42, 44 (Ky. App. 2023).

Hughes' brief fails to comply with some provisions of our RAP.  Specifically, Hughes' brief contains no references to the record below, nor does it

contain a preservation statement referencing where his arguments were properly preserved for review. He cites no case law to support his arguments. Finally, he attached items to his brief that were not part of the record below (which, because they were not part of the circuit court record, we will not consider). All of these are violations of RAP 32.

Despite Hughes' briefing failures, we can follow his argument. The record is not voluminous, consisting of one volume. For some reason, only two of the recorded hearings were made part of the record. We were not required to scour the record to find support for Hughes' legitimate problems with the case.

On the other hand, MSCP failed to file any brief at all. Under RAP 31(H)(3):

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

"The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).

While we do not condone Hughes' deficiencies in his brief, he is a *pro se* Appellant. MSCP, who had counsel in the circuit court action below, failed to

file a brief entirely. We have exercised leniency in the past to those Appellees who have failed to file briefs. But in this case, given the history of how the case was prosecuted for MSCP, such leniency would be misplaced. Because procedural errors by MSCP impacted the result in this case, we choose to vacate the judgment under RAP 31(H)(3)(b).

From the beginning of this action, Hughes disputed that he received the statutorily required notices of the tax lien from MSCP. This is not some minor oversight. When our legislature enacted this series of statutes governing collection of certificates of delinquency, they were to serve multiple purposes. The government entities to which the taxes were owed would be overwhelmed or just abandon collection efforts if they had to collect on all the relatively small amounts of taxes owed. Allowing others to buy the tax debts would increase revenue and eventual collection with an incentive to the collectors, but there were safeguards put in place to make litigation with its costs (mainly attorneys' fees) a last resort.

KRS 134.490 requires initial and annual notices before a collection action may be filed. Hughes says MSCP did not do this. MSCP perfunctorily said they did but filed no proof of doing so. Whether MSCP sent such required notices was a factual dispute in this record. Summary judgment should not have been granted.

But a bigger problem jumps out of this record – the correct status of this case before the summary judgment was granted. When the circuit court realized the initial judgment was entered after the case had been dismissed, it set aside the judgment and gave advice to MSCP on how to proceed. The circuit court said that a CR 60.02 motion could be filed and encouraged service to Hughes at his correct address.

MSCP's attorney did not file a CR 60.02 motion and did not initially serve Hughes. The failure to file a proper CR 60.02 motion is important because of the expiration of the circuit court's continuing jurisdiction over the case.

The dismissal of this case under CR 77.02, even though initially without prejudice, was a final decision. A motion to alter, amend, or vacate that decision had to be filed within ten days. CR 59.05. If no such motion was filed, the circuit court lost jurisdiction to proceed. *See Commonwealth v. Sowell*, 157 S.W.3d 616 (Ky. 2005). There are always exceptions, and the only exception potentially applicable to this case is provided by CR 60.02.

MSCP did not file a CR 60.02 motion even though advised by the circuit court to do so. The motion says it was to alter, amend, or vacate, which is the language applicable to CR 59.05. Even if we look for substance over form, the motion does not clearly state under what provision of CR 60.02 MSCP was proceeding. The motion is not supported by any affidavit.

-11-

MSCP's counsel simply stated that "Plaintiff through error or oversight was not aware" of the dismissal itself. There is no assertion that MSCP was not made aware of the *notice* to dismiss. This notice was sent to an address for the correct attorney, an address that attorney used in this record. That address has not been shown to have been incorrect, and there was no return of the notice for any delivery failure. An attorney neglecting to give proper priority to responding to a notice to dismiss is not grounds for relief under CR 60.02 from a CR 77.02 dismissal. *See Honeycutt v. Norfolk Southern Railway Company*, 336 S.W.3d 133 (Ky. App. 2011).

Not only was MSCP's motion not made pursuant to CR 60.02 and not initially served on Hughes, MSCP's counsel did not appear in court to make the noticed motion to the court. If Hughes' motions can be denied because of his failure to appear, the same rule should apply to MSCP. In any event, the written grounds stated were insufficient to justify relief. In these circumstances, the circuit court abused its discretion in granting what it transformed into a CR 60.02 motion. It follows that the subsequent summary judgment was entered when the circuit court had no jurisdiction over the case.

Ironically, Hughes has consistently acknowledged he must pay the tax with interest. He complained that the seller of the property when he bought it was supposed to pay the taxes for that year, and that might be so, but Hughes is stuck

with paying it as the current owner – if MSCP had just followed the rules for such collections. Had the proper notices been sent prior to litigation, this case with its convoluted procedural missteps might never have happened. A lot of time and expense may have been avoided.

We do not know what will happen on remand. With the state of this record, we should not foreclose the potential of a properly supported CR 60.02 motion, although the lateness of such a motion may now present problems.[10] Thus, we vacate and remand leaving the status of the case as dismissed without prejudice under CR 77.02.

Hughes says that MSCP's counsel informed him via email that he was no longer representing MSCP, but there is (not surprisingly) no record of any Motion to Withdraw being filed by counsel for MSCP. With the absence of an appellee brief, frankly, we do not know if MSCP's counsel of record or MSCP itself or both have just abandoned this case. The circuit court may discover such an abandonment, or MSCP may make that decision when the case returns.

---

[10] We note the prior dismissal was without prejudice. If it is determined that CR 60.02 does not provide relief in this situation, we express no opinion about whether MSCP can refile its case and proceed again. The time limitation issues which may be presented by a refiling of the case are not now before us.

## CONCLUSION

Appellant's Brief and the record reasonably appear to sustain our decision to vacate and remand this case. The Jessamine Circuit Court's order granting summary judgment is VACATED, and the case is remanded first for any proper motion practice to address the prior dismissal of this case for lack of prosecution.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Jerry T. Hughes, *pro se*
Frankfort, Kentucky